September 27, 1977

## 77–54 MEMORANDUM OPINION FOR THE ASSISTANT TO THE ATTORNEY ·GENERAL

### Transfer of Watergate Special Prosecution Force Records to the National Archives—Income Tax Information—26 U.S.C. § 6103(a)

This is in response to your request for our opinion concerning the legality of the transfer of Watergate Special Prosecution Force (WSPF) records containing income tax returns or return information to the National Archives. In light of both the stringency of the provisions pertaining to disclosure of tax records and the applicable penalties, it would be advisable to seek legislative authorization for a transfer of WSPF tax records to the Archives. The reasons for our conclusion are set forth herein.

The Tax Reform Act of 1976, Pub. L. 94–455, was designed to impose much greater restrictions on the disclosure of tax returns and return information than had previously existed.[1] Such records are now deemed to be "confidential" and are not to be disclosed in any manner "except as authorized by this title." 26 U.S.C. § 6103(a). *See also* S. Rep. No. 938 (Part I), 94th Cong., 2d Sess. 318 (1976). Even though disclosure is authorized by § 6103 with respect to a number of Federal agencies or other entities, there is no authorization to disclose tax returns or return information to the Archives.[2] The statute would thus, on its face, prohibit a transfer of tax records to the Archives.

This statute, however, is not the only one that addresses this problem. We must also consider the Archivist's authority to accept and maintain records:

---

[1] While certain tax records held by the WSPF may be exempt from the restrictions imposed by the Act, *see* Treas. Reg. § 404.6103(a)–1, it is our understanding that it is neither feasible nor desirable to segregate these records. We thus consider the question here as though all WSPF tax records are subject to the 1976 Act.

[2] It seems apparent that a transfer to the Archives would result in a "disclosure" subject to the 1976 Act. That term is defined as "the making known to any person in any manner whatever a return or return information," 26 U.S.C. § 6103(b)(8), and this definition would be fulfilled because Archives personnel are expected to examine the records pursuant to Freedom of Information requests and for archival purposes.

> The Administrator of General Services shall be responsible for the custody, use, and withdrawal of records transferred to him. When records, the use of which is subject to statutory limitations and restrictions, are so transferred, permissive and restrictive statutory provisions with respect to the examination and use of records applicable to the head of the agency from which the records were transferred or to employees of that agency are applicable to the Administrator, the Archivist of the United States, and to the employees of the General Services Administration, respectively. 44 U.S.C. § 2104.

This provision clearly indicates that materials subject to "restrictive statutory provisions" may be transferred to, and held by, the Archivist. The legislative history of the provision bears this out, for it demonstrates that the imposition of restrictions on the Archivist was designed to make a transfer of confidential records to the Archives more acceptable to the agencies generating those records. *See* H.R. Rep. No. 44, 80th Cong., 1st Sess. 2–3 (1947); S. Rep. No. 706, 80th Cong., 1st Sess. 2 (1947). Indeed, the statutory functions assigned to the Archives would be greatly hampered if it could not obtain and hold historic records subject to restrictions on disclosure.

We thus have, on the one hand, a statute allowing accession of confidential records to the Archives, and on the other hand, another statute allowing disclosure only upon an authorization that is not present here. These provisions need not necessarily be in conflict. One approach to reconcile them would be to allow a transfer to the Archives only if the statute mandating confidentiality explicitly so provided. We believe, however, that this is an unsatisfactory resolution of the relationship of these two statutes. This resolution would frustrate Congress' intent underlying 44 U.S.C. § 2104 to provide for a convenient repository of historical records subject to some form of restriction on public inspection. Because most statutes mandating some form of confidentiality are similar to 26 U.S.C. § 6103 in that they do not explicitly provide for a transfer to the Archives, a conclusion that the lack of such a provision bars such a transfer would have the practical effect of rendering Congress' efforts in enacting 44 U.S.C. § 2104 futile. We thus do not believe that Congress intended that a statute mandating confidentiality must expressly provide for a transfer to the Archives in order for such a transfer to be authorized.

By the same token, however, we do not believe that 44 U.S.C. § 2104 can be taken to override statutes mandating the confidentiality of records in every instance. While it may not often be the case, there may exist situations where Congress' purposes underlying confidentiality statutes may bar even the sort of disclosure which occurs in a transfer to the Archives. The fact that the Archives may generally receive confidential records under 44 U.S.C. § 2104 cannot, in our view, justify an approach which does not trouble to inquire into Congress' intent in

enacting a particular statute subjecting certain records to restrictions on disclosure.

The inquiry with respect to intent concerning tax returns and return information produces no clear answer. The legislative materials do not address the problem directly, and those aspects of the materials that relate in some way to this matter were issued without any thought of their applicability to this problem. However, it is our view that on balance the statute itself and its legislative history are indicative of a legislative intent that tax records are not to be transferred to the Archives.

We have already seen that the statute itself allows for disclosure only "as authorized by this title." 26 U.S.C. § 6103(a). The legislative history makes clear that Congress intended that no disclosure of tax information could be made except in the limited situations delineated in § 6103. S. Rep. No. 938 (Part I), *supra*, at 318. The amount of attention that was paid to the formulation of the exceptions would allow for an inference that no exception was intended as to the Archives.

A stronger indication of congressional intent on this matter can be derived from its enactment of provisions respecting the disposition of returns and return information. Section 6103(p)(4)(F)(ii) provides that when an agency has completed its use of tax returns or return information, it must

> (I) return to the Secretary such returns or return information (along with any copies made therefrom)
> (II) otherwise make such returns or return information undisclosable, or
> (III) to the extent not so returned or made undisclosable, ensure that the conditions of subparagraphs (A), (B), (C), (D), and (E) of this paragraph continue to be met with respect to such returns or return information . . . .

This clearly shows that Congress was concerned about the disposition of tax records upon the completion of an agency's task and decided that rigid safeguards should be imposed on their disposition.

The legislative history of this provision tells how rigid Congress meant these safeguards to be. That history states that the safeguards in general were "designed to protect the confidentiality of the returns and return information and to make certain that they are not used for purposes other than the purposes for which they were disclosed." S. Rep. No. 938 (Part I), *supra*, at 344. To ensure that this goal was accomplished, care was to be taken with respect to the disposition of tax records when they were no longer needed. In this regard the legislative history states that the statute requires "returning or destroying the information when the agency is finished with it." S. Rep. No. 938 (Part I), at 345. This requirement appears to be one of the means chosen by Congress to keep returns from being "scattered all over the landscape." Hearings on Federal Tax Return Privacy before the Sub-

committee on Administration of the Internal Revenue Code of the Senate Finance Committee, 94th Cong., 1st Sess., 100 (1975) (remarks of Senator Haskell).[3]

While we recognize that this display of legislative intent does not put the issue beyond all dispute, we believe that the legislative history suggests an intent on the part of Congress that tax records should not be transferred to the Archives. We believe, moreover, that the applicable penalties warrant a cautious interpretation of the statute, *see* 18 U.S.C. § 1905, 26 U.S.C. §§ 7213, 7217, and that any doubts here with regard to Congress' intent should thereby be resolved in favor of staying within the explicit restrictions of the statute. We therefore advise that the WSPF tax records should be transferred only upon an explicit legislative authorization.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[3] We recognize that subparagraph (III) of § 6103(p)(4)(F)(ii) may contemplate some flexibility in dealing with tax records upon the completion of an Agency's use of them. The intent underlying this provision is somewhat confusing, particularly in light of the statement in the legislative history that returns no longer needed were to be returned or destroyed. In any event, we do not believe that this provision can be taken to authorize a transfer of tax records to an entity not expressly authorized to receive such records by the Act and one that will not use the records for the purposes for which they were originally transferred.